Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| FORTY SEVEN, INC., KRISTINE M. BALL, JEFFREY W. BIRD, IAN T. CLARK, DENNIS J. HENNER, RAVINDRA MAJETI, MARK MCCAMISH and IRVING L. WEISSMAN, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1.      Plaintiff brings this action against Forty Seven, Inc. ("Forty Seven" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Forty Seven will be acquired by Gilead Sciences, Inc. ("Gilead"), through Gilead's wholly-owned subsidiary Toro Merger Sub, Inc. ("Purchaser") (the "Proposed Transaction").

2.      On March 2, 2020, Forty Seven and Gilead issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated March 1, 2020 (the "Merger Agreement") to sell Forty Seven to Gilead.  Under the terms of the Merger Agreement, Gilead will acquire all outstanding shares of Forty Seven for $95.50 in cash per share of Forty Seven common stock (the "Offer Price").  Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on March 10, 2020.  The Tender Offer is scheduled to expire at one minute after 11:59 p.m., Eastern Time, on April 6, 2020.  The Proposed Transaction is valued at approximately $4.9 billion.

3.      On March 10, 2020, Forty Seven filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Forty Seven stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Forty Seven management's financial projections, relied upon by the Company's financial advisor, Centerview Partners LLC ("Centerview"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; and (iii) Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(e) and 20(a) of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4.     In short, the Proposed Transaction will unlawfully divest Forty Seven's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Forty Seven is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Forty Seven.

9.     Defendant Forty Seven is a Delaware corporation with its principal executive offices located at 1490 O'Brien Drive, Suite A, Menlo Park, CA 94025. Forty Seven is a clinical-stage

immuno-oncology company that is developing therapies targeting cancer immune evasion pathways and specific cell targeting approaches based on technology licensed from Stanford University. Forty Seven's lead program, magrolimab, is a monoclonal antibody against the CD47 receptor, a "don't eat me" signal that cancer cells commandeer to avoid being ingested by macrophages. This antibody is currently being evaluated in multiple clinical studies in patients with myelodysplastic syndrome, acute myeloid leukemia, non-Hodgkin lymphoma, and solid tumors. Forty Seven's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "FTSV."

10. Defendant Kristine M. Ball ("Ball") has been a director of the Company since February 2018.

11. Defendant Jeffrey W. Bird ("Bird") has been a director of the Company since June 2015.

12. Defendant Ian T. Clark ("Clark") has been a director of the Company since April 2018.

13. Defendant Dennis J. Henner ("Henner") has been a director of the Company since November 2015.

14. Defendant Ravindra Majeti ("Majeti") is one of the Company's co-founders and has been a director of the Company since May 2015.

15. Defendant Mark McCamish ("McCamish") has been the Company's President, Chief Executive Officer ("CEO") and a director since May 2017.

16. Defendant Irving L. Weissman ("Weissman") is one of the Company's co-founders and has been a director of the Company since May 2015.

17. Defendants identified in paragraphs 10 to 16 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18. Gilead is a research-based biopharmaceutical company that discovers, develops and

commercializes innovative medicines in areas of unmet medical need. The company strives to transform and simplify care for people with life-threatening illnesses around the world. Gilead has operations in more than 35 countries worldwide, with headquarters in Foster City, California. Gilead's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "GILD."

19. Purchaser is a Delaware corporation and wholly owned subsidiary of Gilead.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

20. Forty Seven is a clinical-stage immuno-oncology company focused on developing novel therapies to activate macrophages in the fight against cancer. Forty Seven was founded based on the insight that blocking CD47, a key signaling molecule that is overexpressed on cancer cells, renders tumors susceptible to macrophages. By harnessing macrophages, the Company believes that its lead product candidate, 5F9, can transform the treatment of cancer. 5F9 has demonstrated promising activity in six Phase 1b/2 clinical trials in which the Company has treated over 290 cancer patients with solid or hematologic tumors. In addition, Forty Seven has two additional product candidates in preclinical development; FSI-189, an anti-SIRPα antibody, and FSI-174, an anti-cKIT antibody. The Company holds worldwide rights to all of its product candidates.

21. Onn December 9, 2019, the Company announced updated clinical data from its trial evaluating magrolimab in combination with azacitidine for the treatment of myelodysplastic syndrome and acute myeloid leukemia. The new results showed the combination of magrolimab and azacitidine to be highly active and well tolerated in relevant patients.

22. On January 10, 2020, the Company announced its 2020 strategic priorities and expected milestones, including:

[A]dvancing magrolimab in registration-enabling programs for the treatment of

patients with untreated, higher-risk myelodysplastic syndrome (MDS) and heavily-pretreated, relapsed or refractory diffuse large B-cell lymphoma (DLBCL). Magrolimab has previously been granted Fast Track designation by the FDA for the treatment of MDS and acute myeloid leukemia (AML), and for the treatment of relapsed or refractory DLBCL and follicular lymphoma, as well as Orphan Drug designation by the U.S. Food and Drug Administration (FDA) and European Medicines Agency for the treatment of AML. In December 2019, the FDA granted Orphan Drug designation to magrolimab for the treatment of MDS.

The company expects to achieve the following milestones in 2020:

*Myelodysplastic Syndrome:*

- Initiate Phase 3 ENHANCE trial evaluating the combination of magrolimab and azacitidine compared to azacitidine alone in patients with untreated, higher risk-MDS in the second quarter;
- Present updated data from the ongoing Phase 1b clinical trial evaluating the combination of magrolimab and azacitidine in untreated patients with higher risk MDS mid-year;
- Complete enrollment in the ongoing Phase 1b clinical trial in the third quarter.

*Diffuse Large B-Cell Lymphoma:*

- Initiate single-arm, registration-enabling trial evaluating the combination of magrolimab and rituximab in heavily pre-treated relapsed or refractory DLBCL patients who have failed at least two prior lines of therapy in the first quarter;
- Present initial data from the registration-enabling trial in the fourth quarter.

**Magrolimab – Other Programs**

Forty Seven will expand enrollment in its ongoing Phase 1b clinical trial evaluating the combination of magrolimab and azacitidine to include additional untreated TP53 mutant AML patients who are ineligible for induction chemotherapy to inform a potential registrational path. Updated data from this trial will be presented mid-year. Additionally, Forty Seven is evaluating magrolimab for the treatment of colorectal (CRC) and ovarian cancer. Clinical data in patients with CRC and ovarian cancer will be presented at the ASCO Gastrointestinal Cancers Symposium (ASCO-GI), held January 23-25, 2020 in San Francisco, and the ASCO-SITC Clinical Immuno-Oncology Symposium, held February 6-8, 2020 in Orlando, respectively. While data from these studies do not support a path to registration, Forty Seven intends to use these results and learnings to identify its next steps in solid tumors.

**Additional Pipeline Programs**

Forty Seven is developing a broad pipeline of additional programs, which take advantage of the CD47/SIRPα pathway as a rich target for engaging macrophages. FSI-174, an anti-cKIT antibody, is being developed in combination with magrolimab

as a novel, all-antibody conditioning regimen to address the limitations of current stem cell transplantation conditioning regimens. FSI-189, an anti-SIRPα antibody, is being developed for the treatment of cancer, as well as certain non-oncology conditions including transplantation conditioning.

The company expects to achieve the following milestones in 2020:

- Initiate a Phase 1 clinical trial evaluating the safety and tolerability of FSI-174 in healthy volunteers in the first quarter;
- File an investigational new drug application with the FDA for FSI-189 in the first quarter; and
- Initiate a Phase 1 clinical trial evaluating the safety and tolerability of FSI-189 for the treatment of cancer in the second quarter.

23.     Most recently, on March 11, 2020, the Company and Rocket Pharmaceuticals, Inc. ("Rocket") announced that they had entered into a research collaboration to pursue clinical proof-of-concept for Forty Seven's novel antibody-based conditioning regimen, FSI-174 (anti-cKIT antibody) plus magrolimab (anti-CD47 antibody), with Rocket's *ex vivo* lentiviral vector hematopoietic stem cell (LVV HSC) gene therapy, RP-L102.  The initial collaboration will evaluate this treatment regimen in Fanconi Anemia (FA), a genetic disease that affects patients' capacity to produce blood cells and is associated with an increased risk of leukemia and other neoplasms.  RP-L102, Rocket's gene therapy approach for FA, involves treatment with patients' own gene-corrected blood forming stem cells (hematopoietic stem cells, or HSCs).

**The Proposed Transaction**

24.     On March 1, 2020, Forty Seven and Gilead issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> Foster City, Calif. and Menlo Park, Calif. — March 2, 2020 — Gilead Sciences, Inc. (Nasdaq: GILD) and Forty Seven, Inc. (Nasdaq: FTSV) announced today that the companies have entered into a definitive agreement pursuant to which Gilead will acquire Forty Seven for $95.50 per share in cash. The transaction, which values Forty Seven at approximately $4.9 billion, was unanimously approved by both the Gilead and Forty Seven Boards of Directors and is anticipated to close during the second quarter of 2020, subject to regulatory approvals and other customary closing conditions.

Through the addition of Forty Seven's investigational lead product candidate, magrolimab, the acquisition will strengthen Gilead's immuno-oncology research and development portfolio. Magrolimab is a monoclonal antibody in clinical development for the treatment of several cancers for which new, transformative medicines are urgently needed, including myelodysplastic syndrome (MDS), acute myeloid leukemia (AML) and diffuse large B-cell lymphoma (DLBCL). The investigational therapy targets CD47, a "do not eat me" signal that allows cancer cells to avoid destruction thereby permitting the patient's own innate immune system to engulf and eradicate those cancer cells. Forty Seven presented promising results of a Phase 1b study of magrolimab in patients with MDS and AML at the American Society of Hematology meeting in December 2019. Magrolimab has the potential to be a first-in-class therapy.

"This agreement builds on Gilead's presence in immuno-oncology and adds significant potential to our clinical pipeline," said Daniel O'Day, Chairman and Chief Executive Officer of Gilead Sciences. "Magrolimab complements our existing work in hematology, adding a non-cell therapy program that complements Kite's pipeline of cell therapies for hematological cancers. With a profile that lends itself to combination therapies, magrolimab could potentially have transformative benefits for a range of tumor types. We are looking forward to working with the highly experienced team at Forty Seven to help patients with some of the most challenging forms of cancer."

"This is an exciting day for patients who may one day benefit from future anti-CD47 therapies and other immuno-oncology treatments based on our research and an exciting time for Forty Seven as this allows us to achieve our vision of helping patients defeat their cancer," commented Mark McCamish, MD, PhD, President and Chief Executive Officer of Forty Seven. "We are pleased to join Gilead and believe that by combining our scientific expertise with Gilead's strength in developing treatments that modify the immune system, we will be able to more rapidly advance our therapies."

**Magrolimab**

Forty Seven is initially studying magrolimab in patients with MDS and AML. Additional studies are ongoing in non-Hodgkin lymphoma (NHL) and solid tumors. Magrolimab has been granted Fast Track designation by the U.S. Food and Drug Administration (FDA) for the treatment of MDS and AML, and for the treatment of relapsed or refractory DLBCL and follicular lymphoma, two forms of B-cell NHL. Magrolimab has also been granted Orphan Drug designation by the FDA for the treatment of MDS and AML and by the European Medicines Agency for the treatment of AML.

More than 400 patients have received the compound to date through clinical trials.

***Ongoing Phase 1b Clinical Trial***

In December 2019, Forty Seven presented promising results of a Phase 1b trial evaluating magrolimab in combination with azacitidine in untreated patients with

- 8 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

higher risk MDS and untreated patients with AML, who are ineligible for induction chemotherapy. This has led to the initiation of a potential registrational cohort in MDS. All patients received a 1 mg/kg priming dose of magrolimab, coupled with intrapatient dose escalation to mitigate on-target anemia. Patients were then treated with full doses of azacitidine and magrolimab maintenance doses of 30 mg/kg weekly.

As of the data cutoff of November 18, 2019, 62 patients had been treated with the combination in the Phase 1b portion of the trial, including 35 patients with MDS and 27 patients with AML.

*Clinical Activity Data*

As of the data cutoff, 46 patients were evaluable for response assessment, including 24 patients with untreated higher-risk MDS and 22 patients with untreated AML, who were ineligible for induction chemotherapy.

- In higher-risk MDS, the overall response rate (ORR) was 92 percent, with 12 patients (50 percent) achieving a complete response (CR), eight patients (33 percent) achieving a marrow CR and two patients (8 percent) achieving hematologic improvement. Two patients (8 percent) had stable disease.
- In untreated AML, the ORR was 64 percent, with nine patients (41 percent) achieving a CR, three patients (14 percent) achieving a CR with complete blood count recovery (CRi) and one patient (5 percent) achieving a morphologic leukemia-free state (MLFS). Seven patients (32 percent) had stable disease and one patient (5 percent) had progressive disease.
- The median time to response among MDS and AML patients treated with the combination was 1.9 months.
- Median duration of response and median overall survival have not been reached for either MDS or AML patients, with a median follow-up of 6.4 months (range 2.0 to 14.4 months) for MDS and 8.8 months (range 1.9 to 16.9 months) for AML.

*Safety Data*

As of the data cutoff, the combination of magrolimab and azacitidine was well-tolerated, with no evidence of increased toxicities compared to azacitidine alone. Adverse events (AEs) were consistent with prior clinical experience. No deaths were observed in the first 60 days on combination treatment and only one patient out of 62 (1.6 percent) discontinued treatment due to a treatment-related AE.

**Additional Programs**

Beyond magrolimab, Forty Seven is preparing to advance two additional investigational compounds into clinical testing. FSI-174, an anti-cKIT antibody, is being developed in combination with magrolimab as a novel, all-antibody conditioning regimen to address the limitations of current stem cell transplantation conditioning regimens. FSI-189, an anti-SIRPα antibody, is being developed for the treatment of cancer, as well as certain non-oncology settings, including transplantation conditioning.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Terms of the Transaction**

Under the terms of the merger agreement, a wholly-owned subsidiary of Gilead will promptly commence a tender offer to acquire all of the outstanding shares of Forty Seven's common stock at a price of $95.50 per share in cash. Following successful completion of the tender offer, Gilead will acquire all remaining shares not tendered in the offer through a second step merger at the same price as in the tender offer.

Consummation of the tender offer is subject to a minimum tender of at least a majority of outstanding Forty Seven shares plus Forty Seven shares underlying vested options, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions.

Gilead plans to pay all cash consideration for the transaction. The tender offer is not subject to a financing condition.

Citi and J.P. Morgan are acting as joint financial advisors to Gilead. Centerview Partners LLC is acting as the exclusive financial advisor to Forty Seven. Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel to Gilead and Cooley LLP is serving as legal counsel to Forty Seven.

**Insiders' Interests in the Proposed Transaction**

28.   Forty Seven insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Forty Seven.

29.   Company insiders stand to reap substantial financial benefits for securing the deal with Gilead. The following table sets forth the cash payments the Company's executive officers and directors will receive in connection with tendering of their shares in the Tender Offer:

| Name of Executive Officer or Director | Number of Shares[1] | Aggregate Cash Consideration for Shares |
|---|---|---|
| Mark A. McCamish, M.D. | 60,719 | $ 5,798,665 |
| Ann D. Rhoads | 11,418 | 1,090,419 |
| Chris H. Takimoto, M.D. | — | — |
| Craig S. Gibbs[2] | 112,902 | 10,782,141 |
| Kristine M. Ball | — | — |
| Jeffrey W. Bird, M.D.[3] | 1,018,035 | 97,222,343 |
| Ian T. Clark | — | — |
| Dennis J. Henner, Ph.D. | — | — |
| Ravindra Majeti, M.D.[4] | 1,261,400 | 120,463,700 |
| Irving L. Weissman, M.D.[5] | 2,002,761 | 191,263,676 |
| All of the Company's current directors and executive officers as a group (10 persons) | 4,467,235 | 426,620,943 |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

30. Further, upon consummation of the Proposed Transaction, all vested and unvested Company options will be converted into the right to receive cash payments, as set forth in the following table:

| Name of Executive Officer or Director | Vested Company Options | | | Unvested Company Options | | | Aggregate Company Option Payment |
|---|---|---|---|---|---|---|---|
| | Shares Underlying Vested Company Options | Weighted Average Exercise Price | Aggregate Vested Company Option Payment(1) | Shares Underlying Unvested Company Options | Weighted Average Exercise Price | Aggregate Unvested Company Option Payment(1) | |
| Mark A. McCamish, M.D. | 501,311 | $ 6.20 | $ 44,767,072 | 824,080 | $ 17.38 | $ 64,377,129 | $ 109,151,114 |
| Ann D. Rhoads | 83,303 | 10.22 | 7,104,079 | 240,459 | 20.36 | 18,068,089 | 25,172,168 |
| Chris H. Takimoto, M.D. | 177,045 | 4.36 | 16,135,881 | 193,095 | 23.59 | 13,885,461 | 30,021,342 |
| Craig S. Gibbs | 168,408 | 3.89 | 15,427,856 | 142,147 | 19.03 | 10,869,981 | 26,298,669 |
| Kristine M. Ball | 34,838 | 8.76 | 3,021,848 | 45,161 | 9.23 | 3,896,039 | 6,917,887 |
| Jeffrey W. Bird, M.D. | 10,895 | 8.76 | 945,032 | 20,072 | 9.82 | 1,719,768 | 2,664,800 |
| Ian T. Clark | 57,975 | 8.76 | 5,028,751 | 78,840 | 9.03 | 6,817,294 | 11,846,045 |
| Dennis J. Henner, Ph.D. | 10,895 | 8.76 | 945,032 | 20,072 | 9.82 | 1,719,768 | 2,664,800 |
| Ravindra Majeti, M.D. | 10,895 | 8.76 | 945,032 | 20,072 | 9.82 | 1,719,768 | 2,664,800 |
| Irving L. Weissman, M.D. | 10,895 | 8.76 | 945,032 | 20,072 | 9.82 | 1,719,768 | 2,664,800 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

31. The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Forty Seven's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

32. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Forty Seven management's financial projections, relied upon by the Company's financial advisor Centerview in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; and (iii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning Forty Seven's Financial Projections*

33. The Recommendation Statement omits material information regarding the Company's financial projections provided by Forty Seven's management and relied upon by Centerview for its financial analyses.

- 11 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

34. For example, with respect to the Company's financial projections, the Recommendation Statement sets forth:

> The Projections were created by the Company's management based on their assumptions about the Company's future business, ***including applying a risk adjusted probability of success with respect to developing and commercializing (i) magrolimab and other licensed antibodies under the terms of the license and collaboration agreement with Ono Pharmaceutical Co., Ltd, (ii) magrolimab for each of the indications currently being investigated by the Company and (iii) the Company's current pipeline of other drug candidates in the early stages of research and development for the indications currently being investigated by the Company***. The assumptions included in the Projections also reflect expected research and development, sales and marketing and general administrative expenses, and certain risk-based adjustments based management's subjective judgment. The Projections further reflect numerous estimates and assumptions made by the Company's management with respect to general economic, competitive, regulatory, reimbursement and other market and financial conditions and other future events, all of which are difficult to predict and many of which are beyond the Company's control.

Recommendation Statement at 26 (emphasis added). The Recommendation Statement fails, however, to disclose management's estimate of the risk adjusted probability of success with respect to developing and commercializing (i) magrolimab and other licensed antibodies under the terms of the license and collaboration agreement with Ono Pharmaceutical Co., Ltd, (ii) magrolimab for each of the indications currently being investigated by the Company, and (iii) the Company's current pipeline of other drug candidates in the early stages of research and development for the indications currently being investigated by the Company.

35. Additionally, the Recommendation Statement fails to disclose the un-risked projections so Forty Seven stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.

36. Moreover, the Recommendation Statement fails to disclose the Company's non-cash compensation based expense over the projection period that was treated as a cash expense in Company management's calculation of the Company's unlevered free cash flows.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

37. Furthermore, the Recommendation Statement fails to disclose a breakdown of the specific revenues and unlevered free cash flow from (i) magrolimab and other licensed antibodies under the terms of the license and collaboration agreement with Ono Pharmaceutical Co., Ltd, (ii) magrolimab for each of the indications currently being investigated by the Company and (iii) the Company's current pipeline of other drug candidates in the early stages of research and development for the indications currently being investigated by the Company.

38. The omission of this information renders the statements in the "Management Projections" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Centerview's Financial Analyses**

39. The Recommendation Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Forty Seven's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

40. With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 12.0% to 14.0%; (ii) the basis for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2035 at a rate of free cash flow decline of 60% year over year; and (iii) the fully diluted shares outstanding of Forty Seven (using the treasury method and taking into account outstanding in-the-money options) as of March 1, 2020.

41. The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

42. The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders .

43. For example, the Recommendation Statement sets forth:

> It is possible that Continuing Employees, including executive officers, will enter into new compensation arrangements with Gilead or the Surviving Corporation. Such arrangements may include agreements regarding future terms of employment, the right to receive equity or equity-based awards of Gilead and/or to receive retention bonus awards. Any such arrangements are currently expected to be entered into after the completion of the Offer and will not become effective until after the Merger is completed, if at all. There can be no assurance that the applicable parties will reach an agreement on any terms, or at all and neither the Offer nor the Merger is conditioned upon any executive officer or director of the Company entering into any such agreement, arrangement or understanding.

*Id.* at 10. The Recommendation Statement fails, however, to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Gilead and Forty Seven executive officers and directors, including who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of Gilead's proposals or indications of interest mentioned management retention, consulting arrangements, cash, stock and co-investment opportunities, or equity participation in the combined company.

44. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management

and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45. The omission of this information renders the statements in the "Background of the Offer and Merger" and "Future Arrangements" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

46. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Forty Seven stockholders will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations
of Section 14(e) of the Exchange Act**

47. Plaintiff repeats all previous allegations as if set forth in full.

48. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer commenced in conjunction with the Proposed Transaction.

49. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer commenced in conjunction with the Proposed Transaction.

50. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT II

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. The Individual Defendants acted as controlling persons of Forty Seven within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Forty Seven and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

55. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

56. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Forty Seven, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

| | | |
|---|---|---|
| 1 | Dated: March 16, 2020 | **WEISSLAW LLP** |
| 2 | | By: /s/ *Joel E. Elkins* |
| 3 | | Joel E. Elkins |
| 4 | | 9107 Wilshire Blvd., Suite 450 |
| 5 | | Beverly Hills, CA 90210<br>Telephone:  310/208-2800 |
| 6 | | Facsimile:   310/209-2348<br>          -and- |
| 7 | | Richard A. Acocelli<br>1500 Broadway, 16th Floor |
| 8 | | New York, NY  10036<br>Telephone: 212/682-3025 |
| 9 | | Facsimile:  212/682-3010 |
| 10 | | *Attorneys for Plaintiff* |

- 18 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS